IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STAFFORD TRADING, INC., and JOHN S. STAFFORD, JR. | ) ) ) |
| Plaintiffs | ) No.: 05-C-4868 ) |
| v. | ) Judge David H. Coar ) |
| FREDERICK J. LOVELY and CHARLES POKOSKI | ) Magistrate Judge Arlander Keys ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendants' Motion to Compel
the Production of Privileged Documents. Plaintiffs sued
Defendants seeking a declaration that Defendants do not have any
rights in an options trading platform known as RIVAS. During
discovery, Plaintiffs refused to produce a number of documents,
claiming that they fall within the ambit of the attorney-client
privilege. Defendants contend that Plaintiffs' poorly presented
privilege log fails to carry Plaintiffs' burden of proving that
the documents are entitled to such protection and that they
should be produced. For the reasons set forth below, Defendants'
Motion is granted in part, and denied in part.

### Background Facts

In approximately 2000, Stafford Trading, Inc. and John S.
Stafford Jr., as well as other Stafford-owned entities
(collectively "Stafford"), retained investment banker Goldman

1

Sachs ("GS") to locate potential purchasers for Stafford, and to assist in facilitating the transaction. In mid-2001, the Toronto Dominion Bank ("TD") expressed an interest in acquiring the Stafford businesses. Upon GS's recommendation, Stafford retained the law firm of Kirkland & Ellis ("Kirkland") to represent Stafford in the potential transaction with TD, and also retained the law firm of Sullivan & Cromwell to advise it on certain aspects of the TD transaction.

GS performed due diligence on the Stafford businesses and gained important, detailed knowledge about Stafford's corporate structures and operations. GS was heavily involved in the negotiations between Stafford and TD, and frequently communicated with Kirkland regarding the transaction.

The transaction was completed in February of 2002, at which time some of the Stafford businesses were merged into TD Options, LLC ("TDO"). In addition to other consideration, Stafford transferred to TD all of its rights in its technology, including an options trading platform called RIVAS. Defendants, who had either worked with or for John Stafford[1], became members of TDO, and received a sum of money as an incentive to remain with TDO following the merger.

---

[1]It is Plaintiffs' position that Defendants developed RIVAS while employed by Stafford; conversely, Defendants contend that they were Mr. Stafford's partners and that they have ownership rights with regard to RIVAS.

2

Approximately three years after the completion of the transaction, Defendants formally claimed that they had created and jointly-owned RIVAS with Mr. Stafford, and that Mr. Stafford owed them one half of the proceeds from the TD transaction that related to RIVAS. Stafford filed this declaratory judgment action to resolve the issue of ownership.

The present dispute arose during discovery. Defendants argue that Plaintiffs are wrongfully withholding, on the basis of the attorney-client privilege, documents[2] that clearly fall beyond the scope of the privilege, such as: 1) documents containing business, as opposed to legal advice; 2) documents that were shared with Goldman Sachs, thereby waiving the privilege; and 3) documents that were shared with third-party TD, also waiving the privilege. At oral argument before this Court on January 10, 2007, it became apparent that Plaintiffs had produced the third category of documents - documents that had been shared with TD - but had merely redacted attorney notes written on the documents.

The parties' dispute is not limited to substantive privilege law. Defendants' counsel argues that Plaintiffs' confusing, incomplete, inconsistent, and sometimes inaccurate privilege log

---

[2] In some instances, Plaintiffs have not withheld the entire document, but have produced only redacted copies of the documents.

warrants a waiver of whatever privilege might have existed[3]. Plaintiffs counter that Defendants sidestepped their obligations under Rule 37.2, noting that the parties' and the court's time might have been spared, at least with regard to some of the documents at issue, if Defendants had properly conducted a meet and confer before filing the present Motion.

Plaintiffs have submitted to the Court a privilege log, with addendums, affidavits, and their purportedly privileged documents for an *in camera* review.

## Discussion

The attorney-client privilege protects confidential communications between a client and his attorney for the purpose

---

[3] The Court shares Defendants' frustration. In support of their claims of privilege, Plaintiffs have submitted affidavits describing the documents sought to be withheld. The affidavits identify the documents only by the Bates Stamp number, and do not make any attempt to identify the Privilege Log Number corresponding with that document. The unnecessarily time-consuming and confusing task of aligning the various Bates Stamp numbers referenced in the affidavits with the corresponding documents in the Privilege Log was further complicated by the fact that the affidavits sometimes referenced Bates Stamp numbers that did not correspond to any of the documents in the Privilege Log (See, e.g., Affidavit of Robert M Hayward at ¶ 13, referencing P-STA 000064 through P-STA 000068, which is not identified on the Privilege Log Summary) and because the affidavits sometime referenced a range of Bates Numbers that was slightly inconsistent with the Privilege Log (See Affidavit of Robert M. Hayward at ¶ 20 referencing Bates Numbers P-STA 000756-000758, which the Privilege Log references as P-STA Numbers 000757-000758). Plaintiffs' counsel has taken a risk in asking the Court to do their job for them, particularly where some of the affidavits contain almost 40 paragraphs discussing at least as many documents, and the documents sought to be withheld contain hundreds of pieces of paper.

4

of obtaining legal of advice. *Denius v. Dunlap,* 209 F.3d 944, 952 (7th Cir. 2000). The Seventh Circuit has stated that the attorney-client privilege applies only where the party seeking to assert the privilege establishes the following: (1) that legal advice of any kind was sought (2) from a lawyer in his capacity as such, (3) the communications related to that purpose, (4) they were made in confidence (5) by the client and/or his agent, (6) were at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless waived. *United States v. White,* 950 F.2d 426, 430 (7th Cir. 1991) (noting that communications are privileged only if the statements do, in fact, reveal the substance of a confidential communication.)

"The doctrine is a common law privilege that can be explicitly or implicitly waived by the client and is subject to a number of restrictions and exceptions." *Id.* The privilege may be waived if the party knowingly discloses confidential information to a third party. *Beneficial Franchise Co., Inc. v. Bank One., N.A.,* 205 F.R.D. 212, 216 (N.D. Ill. 2001). The party asserting the privilege bears the burden of showing that the privilege applies and that it has not been waived. *U.S. v. Evans,* 113 F.3d 1457, 1461 (7th Cir. 1997).

## A. The Privilege Covers Communications Regarding Legal Advice.

The attorney-client privilege applies only where legal, not business, advice is sought. *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1037 (2d Cir. 1984). "While it is true that solely personal or business advice is not protected by the attorney-client privilege, legal advice relating to business matters clearly is." *Marusiak v. Adjustable Clamp Co.,* 2003 WL 21321311, at *2 (N.D. Ill. June 5, 2003). Recognizing the difficulty in negotiating the fine line between legal, as opposed to business advice, the court in *Weeks v. Samsung Heavy Industries, Ltd.,* 1996 WL 288511 at *2 (N.D.Ill. May 30, 1996) explained that:

> The case law is clear that the attorney-client privilege is not vitiated simply because the attorney has weighed business considerations in rendering legal advice. Courts have utilized the following test to distinguish legal from nonlegal advice: [A] matter committed to a professional legal adviser is prima facie so committed for the sake of legal advice . . . and is therefore within the privilege unless it appears to be lacking in aspects requiring legal advice.

Nevertheless, merely sending a communication to an attorney does not cloak a business document with the protections afforded by the attorney-client privilege. *Urban Box Office Network, Inc. v. Interfase Managers, L.P.,* 2006 WL 1004472, at *5 (S.D.N.Y. April 18, 2006). The privilege "protects only those papers prepared . . . for the purpose of confidential communication to the attorney or by the attorney." *Id.* "The attorney client

6

privilege excludes from its scope even confidential
communications with a lawyer about business or other non-legal
matters." *Muro v. Target Corp.,* 2006 WL 3422181, at *3 (N.D.
Ill. Nov. 28, 2006) citing *Burden-Meeks v. Welch,* 319 F.3d 897,
899 (7th Cir. 2003) (stating that "[f]ederal law extends the
privilege to communications about legal subjects, and its hard to
see why a business evaluation meets that description.")

## B. Communications Including Goldman Sachs

Defendants argue that Plaintiffs have wrongfully withheld
over 30 documents, and redacted others, on the basis of the
attorney-client privilege, even though Plaintiff's investment
banker, GS, was privy to those documents.  Defendants contend
that communications between clients and attorneys are not
privileged when financial advisors are included in the
communications, and the advisor's role is to provide business, as
opposed to legal, advice, citing *In re Consol. Litigation
Concerning Internt'l Harvester,* 666 F. Supp. 1148, 1157 (N.D.
Ill. 1987) ("the attorney-client communication disclosed to
Lehman Brothers lost any privileged character they might have
had"); *John Doe Corp v. U.S.,* 675 F.2d 482, 488 (2d Cir. 1982)
(privilege was waived when inclusion of accountant in
communications between client and legal counsel "was sparked by
Accountant's responsibilities in conducting the audit, not by Doe
Corp.'s seeking of legal advice requiring the aid of an

accountant"); *Urban Box Office Network, Inc. v. Interfase Mgrs.,
L.P.,* 2006 WL 1004472, at *4 (S.D.N.Y. 2006) ("simply because
financial consultants are employed to assist a company in a
restructuring transaction does not mean that their communications
with the company's attorneys are privileged. What is relevant is
whether their communications with the attorneys were made in
confidence for the purpose of the client obtaining legal advice
from its counsel"); *Export-Import Bank v. Asia Pulp & Paper Co.,*
232 F.R.D. 103, 113 (S.D.N.Y. 2005) (where advisor was "major
participant in APP's financial affairs, not a mere interpreter"
between the client and its counsel, attorney-client
communications that included investment advisor were not
privileged.)

Plaintiffs claim that "the rule Defendants' rely upon
pertains to the disclosure of information to true third parties
with no special relationship to the client. It does not apply to
a situation like this one, where the investment advisor was privy
to confidential attorney-client communications, because its input
was necessary for the attorney to advise his client, where the
advice provided was primarily legal in nature, and where Stafford
relied upon GS to provide expert financial advice in connection
with the transaction." Pls' Opp. Brf. at 7. Plaintiffs cite to a
litany of relevant caselaw in support of their position, citing
*In re Copper Market Antitrust Litig.,* 200 F.R.D. 213, 217

(S.D.N.Y. 2001) ("confidential communications made for the purpose of obtaining legal advice between a client's representatives and the client's attorney, between representatives of a client, or between attorneys for a client should be protected from disclosure under the attorney-client privilege"); *Caremark, Inc. v. Affiliated Computer Servs , Inc.,* 192 F.R.D. 263, 267 (N.D. Ill. 2000)(applying the more restrictive Illinois control group test and holding that communications between outside counsel and a consultant, who was effectively part of client's control group, were privileged); *Calvin Klein Trademark Trust v. Wachner,* 124 F. Supp. 2d 207 (S.D. N.Y. 2000)(joint discussions among client, its attorney, and its investment banker were privileged where investment banker's role involved providing advice useful to the attorney in rendering a legal opinion); *Allianz Underwriters, Inc. v. Rusty Jones, Inc.,* No. 84 C 10860, 1986 WL 6950 (N.D. Ill. Jun. 12, 1986) (communications between attorney, client, and insurance broker were privileged where it was sent to the broker with the understanding that the broker would communicate necessary facts to the attorney). *See also, Muro v. Target Corp.,* No. 04 C 6267, 2006 WL 3422181, at *4 (N.D. Ill. Nov. 28, 2006) (lack of participation in a communication by attorney does not necessarily obviate privilege; communication is privileged if it reveals "directly or indirectly, the substance of a confidential

attorney-client communication.").

As the parties' citations reveal, courts have reached varied results in assessing whether and when communications with a third-party consultant assisting the client results in waiver of the attorney-client privilege. In *In re Beiter Co,* 16 F.3d 929 (8th Cir. 1994), the court determined that an independent consultant's relationship to the client was of the sort that justified applying the attorney-client privilege. The court based its decision on the fact that the consultant often acted as the client's sole representative on a project that appeared to be the "*sine qua non*" of the client's existence. *Id.* at 934. In light of the consultant's extensive involvement with counsel and his central role in the transaction, the court found no basis for distinguishing him from an employee. *Id.* At 938.

The court in *Copper Market* relied upon *Beiter* to extend the privilege to a public relations firm hired by a foreign corporation to handle all issues relating to publicity and public comments regarding a high profile litigation in the United States. 200 F.R.D. at 218. The *Copper Market* court took a pragmatic approach, and found that the privilege applied because 1) the public relations ("pr") firm was "essentially incorporated into [the client's] staff to perform a corporate function that was necessary"; 2) the firm had the authority to make decisions on the client's behalf; 3) the firm consulted with the client's

10

counsel in formulating its strategy; and 4) the communications were for the purpose of obtaining legal advice. *Id.* at 219. The court saw its conclusion as being a natural extension of the Supreme Court's holding in *Upjohn Co. v. United States,* 449 U.S. 383 (1981), where the Supreme Court "based its holding that the communications at issue were privileged on determinations that the communications had been made to Upjohn's counsel by its employees acting at the direction of their corporate superiors" for the purpose of obtaining legal advice, with the understanding that the communications were confidential. *Copper Market,* 200 F.R.D. at 218 ("The Supreme Court's functional approach in *Upjohn* looked to whether the communications at issue were by the Upjohn agents who possessed relevant information that would enable Upjohn's attorney to render sound legal advice.")

Similarly, in *FTC v. Glaxosmithkline,* 294 F.3d 141 (D.C. Cir. 2002), the D.C. Circuit found that the attorney-client privilege applied to independent contractors assisting a prescription drug manufacturer. In *Glaxosmithkline,* the FTC issued a subpoena for documents relating to a prescription drug manufacturer's filing regarding its patents with the Food and Drug Administration. *Id.* at 143. The manufacturer withheld as privileged documents that were distributed to independent contractors. In analyzing whether the documents were privileged, the DC Circuit noted that public relations and government affairs

11

consultants hired by the client worked with the client's attorneys in the same manner as the full time employees and "became integral members of the team assigned to deal" with the litigation. *Id.* at 148. "In these circumstances, 'there is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice.'" *Id.* (quoting *Copper Market,* 200 F.R.D. at 219.)

In contrast, some courts have extended the privilege to third parties only where they have acted as interpreters between an attorney and his or her client. *U.S. v. Ackert,* 169 F.3d 136, 138 (2d Cir. 1999). The Second Circuit found that, pursuant to the decision in *United States v. Kovel,* 296 F.2d 918 (1961), the presence of a third party does not destroy the attorney client privilege only when the third party serves as an interpreter, facilitating communication between attorney and client. *Id.* The *Ackert* court concluded that communications with third parties that merely serve to inform the attorney or enable him to provide better legal advice, however, are not privileged. *Id.* (finding that communications between the lawyer and his client's investment banker were not privileged simply because the information assisted the attorney in providing legal advice.)

Other courts recognized the "functional equivalent doctrine"

12

outlined in *Beiter,* but were unwilling to expand upon *Beiter* without convincing evidence that the consultant was, in fact, a *de facto* employee. In *Export-Import Bank of the United States.,* 232 F.R.D. at 113, the court noted that the defendant invoked two doctrines to protect attorney-client communications shared with third-parties. The court agreed that communications with professionals, such as financial advisors, are covered by the attorney-client privilege if the advisor acts primarily as an "interpreter," by explaining financial concepts to the client's attorney. *Id.* at 113, *citing Kovel,* 296 F.2d at 922. Next, the court cited to *Bieter,* 16 F.3d at 933-34, in finding that the privilege should also apply where the financial advisor is "so thoroughly integrated into [the client's] corporate structure that he should be treated as though he were a corporate employee for privilege purposes." *Id.* (finding that the presence of such *de facto* employees did not waive the privilege.)

To determine whether the financial advisor assisting the client was a *de facto* employee, the *Export-Import* court considered: 1) whether there was a continuous and close working relationship between the advisor and the company on a critical matter; and 2) whether the advisor alone possessed critical information. *Id.* at 113-14. The *Export-Import* court noted that the client's advisor did not work in the client's offices, and that the advisor, even at the project's peak, devoted only 85% of

his time to the client's business. The court decided that the consultant's "efforts are precisely those that any financial consultant would likely make under the circumstances," and, therefore, communications with the consultant were not entitled to attorney-client privilege protection. *Id.* at 114. *See also In re Currency Conversion Fee*, 2003 WL 22389169 at *2 (S.D.N.Y. 2003) (finding that the privilege did not extend to the consultant, who "was merely a transaction processing and computer services corporation that provided standard trade service to [the client] and a vast number of other credit card companies." ) In rejecting a more expansive interpretation of the attorney-client privilege, the *Export-Import* court explained that:

> if the functional equivalent doctrine were extended to every situation where a financial consultant worked exhaustively to guide a company through a restructuring deal, the exception would swallow the basic rule, set forth in *United States v. Arthur Young & Co.*, 465 U.S. 805, 817 (1984), that there is no privilege protecting communications between clients and their accountants.

Id. at 114.

After reviewing the caselaw, the Court concludes that the rule in *Export-Import* is too restrictive. Notably, the *Export-Import* court's concern about the exception swallowing the basic rule in *Arthur Young* is unwarranted. In declining to embrace an accountant-client privilege in *Arthur Young,* the Supreme Court relied upon the fact that an independent public accountant serves a public role and "assumes a public responsibility transcending

14

any employment relationship with the client. . . . This public watchdog function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust." 465 U.S. at 817-18. The obvious distinction between *Arthur Young* and the instant case is the existence of confidentiality. The Supreme Court makes clear in *Arthur Young* that clients are not entitled to rely upon a bond of confidentiality with an independent accountant, because these accountants act on behalf of the public. Under these circumstances, the accountants could not be considered agents of their clients.

Conversely, in the instant case, GS was clearly acting on behalf of Stafford, not the public at large. Although GS serves a multitude of clients, it is clear in this case that all of the players from GS, Stafford, and Kirkland considered their communications to be confidential, and that the communications were treated as such. Many courts have recognized that, in today's market place, attorneys need to be able to have confidential communications with investment bankers to render adequate legal advice. *See Calvin Klein Trademark Trust v. Wachner*, 124 F. Supp.2d 207, 209 (S.D.N.Y. 2000).

The court in *Urban Box Office Network, Inc. v. Interfase Managers, L.P.,* 2006 WL 1004472 (S.D.N.Y. April 17, 2006) balanced the *Export-Import* court's concerns about improperly

15

expanding the parameters of the privilege with the *Copper Market* court's advocation of a broader, more functional test. The *Urban Box* court recognized that the privilege should be limited to instances where a third party, such as an investment banker or financial advisor, assists a lawyer in giving legal advice. *Id.* at *4. But also acknowledged that there were instances where the third party's participation was required to enable the attorney to render legal advice. *Id.* (citing *Calvin Klein,* 124 F. Supp.2d at 209 (finding that communications with investment banker were privileged because the third party was "involved in rendering expert advice as to what a reasonable business person would consider 'material' in this context. 'Materiality' in this regard is a mixed question of fact and law, which a responsible law firm in Wachtell's place would not be able to adequately resolve without the benefit of an investment banker's expert assessment of which facts were 'material' from a business person's perspective."))

The Court adopts this balanced approach in the instant case, limiting the privilege to those instances where Plaintiffs have demonstrated that GS confidentially communicated with Kirkland or Stafford's in-house counsel for the purpose of obtaining or providing legal advice. Therefore, whether or not the attorney-client privilege applies cannot be determined generally. Instead, Plaintiffs' claims of privilege must be made on a

document by document basis. *Makula v. Sanwa Bus. Credit Corp.,* No. 96 C 7138, 1997 WL 460935, at *2 (N.D. Ill. Aug. 8, 1997). With these principles in mind, the Court turns to the documents at hand.

Document 1: A memorandum from one Kirkland attorney to two other Kirkland attorneys reflecting legal advice on the structure of the TD transaction, which includes extensive handwritten attorney notes. There is no evidence of a communication with Kirkland's client. There are two competing lines of cases on whether such documents are entitled to protection under the attorney-client privilege. "Memos to files prepared by non-legal personnel containing business information are clearly not privileged. These memos are not communications directed to anyone for the purpose of obtaining legal advice and cannot therefore fall within the ambit of the privilege. [*Sneider v. Kimberly-Clark Corp,* 91 F.R.D. 1, 6 (D.C. Ill. 1980)]. The same reasoning applies with equal force to memos to file prepared by counsel because, once again, the intent to confidentially communicate with the client is missing. *Id" Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd.,* 1996 WL 732522, at *5 (N.D. Ill. Dec. 9, 1996)(noting that the failure to argue that the work product doctrine protects the documents waives application of the privilege.) Judge Denlow, however, recognized that "although communications between in-house counsel are not communications

17

directly to or from the client, it appears implicit in present day litigation with multiple attorneys required for proper representation that attorneys must be allowed to confer with each other regarding the representation of a client on a privileged basis in the same way that clients must be able to discuss the advice of counsel amongst themselves on a privileged basis." *McCook Metals L.L.C. v. Alcoa Inc.,* 192 F.R.D. 242, 255 (N.D. Ill. 2000). The Court agrees with Judge Denlow, and finds that the document here reflects legal advice compiled by one Kirkland attorney for the benefit of the others, and for the purpose of providing legal advice. Therefore, the Court finds that the document is PRIVILEGED.

Document 2: This is a series of memoranda prepared by an unidentified Kirkland attorney reflecting legal advice on the structure of the TD transaction, which includes handwritten attorney notes. In her affidavit, former Kirkland attorney Rashimi Chanda, claims ownership of the memoranda and handwritten notes. She explains that the first memorandum (Bates Number P-STA1628-34) memorializes confidential communications with Stafford, and thus is protected by the attorney-client privilege. *Zenith Electronics Corp. v. WH-TV Broadcasting Co.,* 2003 WL 21911066, at *2 (N.D. Ill. Aug. 7, 2003). Conversely, Ms. Chanda explains that the second part of the document (P-STA 1635-43) was prepared for her own use, distinguishing it from Document 1 and

18

the issue presented in *McCook*, 192 F.R.D. at 255. Ms. Chanda

does not state that this memorandum was communicated to other

attorneys, or to the client, or that it memorializes such

communications. Ms. Chanda's unclear and equivocal statement

that "I believe that my notes [without identifying to the Court

which part of this extended document constitutes her "notes"]

reflect communications I had with Chris Thomas, a Stafford

manager" is insufficient to carry Plaintiff's burden that the

privilege should apply. Therefore, this section of Document 2

(P-STA 1635-1643) is not protected by the attorney client

privilege and must be disclosed. *Id.*, 2003 WL 21911066, at *2,

n. 2 ("Such communications could be protected by the work product

doctrine. However, [Plaintiffs] do not claim that the work

product privilege applies to these documents, and accordingly

that privilege is waived.").

Document 3: An email from a Kirkland attorney to Mr. Stafford and

Stafford's in-house counsel regarding Stafford's potential

insurance obligations to TD. PRIVILEGED.

Document 4: A memorandum prepared by an unidentified Kirkland

attorney that was not disseminated to the client. There is no

indication that it reflects client communications or was

distributed to other Kirkland attorneys; Plaintiffs' counsel's

affidavit states only that it was taken from Kirkland's files.

Therefore, the document must be disclosed. *Zenith,* 2003 WL

21911066, at *2, n. 2 ("Such communications could be protected by the work product doctrine. However, [Plaintiffs] do not claim that the work product privilege applies to these documents, and accordingly that privilege is waived.") NOT PRIVILEGED/MUST BE PRODUCED.

Documents 5 and 6: These documents are communications between key Stafford personnel and Stafford's in-house counsel concerning the TD transaction for the purpose of providing legal advice. PRIVILEGED.

Documents 7 and 8: Document 7 is an email dated February 27, 2002, forwarding an email dated February 26, 2002. Both communications are between Stafford's in-house counsel and Stafford employees. However, the February 26th email was sent to Brian Sirois, whom Plaintiffs have failed to identify entirely. Document 8 is an email dated Dec. 12, 2001, forwarding a previous email, dated Dec. 11, 2001. The communications appear to be between Stafford's in-house counsel and Stafford, but also between the unidentified Mr. Sirois and a Mr. Brent Andrews, who is identified only as an "employee" of Stafford. Because Plaintiffs have failed to satisfy their burden of demonstrating that these communications were limited to key employees, the privilege does not apply. *See Muro v. Target Corp.,* 2006 WL 3422181 at *2 (N.D. Ill. 2006). NOT PRIVILEGED/MUST BE PRODUCED.

Document 9: This email is from GS and forwards a draft

20

agreement to Kirkland and key employees at Stafford. This document is particularly challenging, as it raises two issues: 1) should the Court extend the attorney-client privilege to third-party GS? and 2) is this an example of an attorney being asked to provide legal or business advice? As to the first question, it is clear that GS is forwarding confidential information, regarding information within its expertise, on behalf of Stafford. The Agreement is a draft of a business document and clearly contains business advice. However, it is heavily annotated with notes from Kirkland attorney Robert Hayward, and was given to Kirkland for the purpose of obtaining legal advice with regard to a number of the terms - requesting that Kirkland include language in the document regarding specific contingencies, and to comment upon certain tax issues. Therefore, the Court finds that the document is PRIVILEGED. Document 10: This document is an email from a Stafford employee to Kirkland attorney Neil Hirschman, attaching an organizational chart. The chart appears to be a business document and, notably, appears to have been redacted, preventing the Court from properly evaluating the communication. Because Plaintiffs have failed to satisfy their burden, the chart must be disclosed. NOT PRIVILEGED/MUST BE PRODUCED.

Document 11: This is a communication from Kirkland to Stafford's

in-house counsel reflecting legal advice on the proposed
structure of the entities created by the TD transaction.
PRIVILEGED.

Documents 12, 13, 14, and 15: These are communications from
Kirkland to GS and (with regard to documents 12, 13 and 15)
Stafford providing legal advice regarding the drafting of the
Asset Purchase Agreement and the structure of the TD transaction.
Although the documents were shared with GS and contain business
information, the Court is satisfied that GS was included as
Stafford's agent and that Kirkland was providing primarily legal,
not business, advice. *See Urban Box,* 2006 WL 1004472, at \*7
(S.D.N.Y. April 17, 2006) (discussing Document #52). As such the
communications are privileged. PRIVILEGED.

Document 16: This communication is an email from a key
Stafford employee to, among others, TD, with attorney notes in
the margin. Plaintiffs contend, and Defendants do not dispute,
that the underlying email was produced (because it was sent to
TD), but seek to withhold the attorney notes written on the
margins of the email. Attorney notes "reflecting client
confidences and legal advice regarding certain transactions are"
privileged. *In re Sulfuric Acid Antitrust Litigation,* 235 F.R.D.
407,429 (N.D. Ill. 2006). PRIVILEGED

Document 17: A document from GS to Kirkland and Stafford. The

email summarizes certain issues in the TD transaction. Once again, this communication walks the fine line between business and legal advice, but the Court is satisfied that the document primarily was sent for the purpose of seeking legal advice. For example, the document requests legal advice from Kirkland regarding regulatory issues, and the legal implications of structuring payout in a particular way. PRIVILEGED.

Document 18: A memorandum from Kirkland to Stafford and GS providing legal advice regarding requests made by TD's counsel. PRIVILEGED.

Document 19: A comparison of a former and current draft merger agreement from Kirkland to Stafford, Sullivan & Cromwell, and GS for the purpose of providing legal advice. PRIVILEGED.

Document 20: An email from GS forwarding to Kirkland term sheets for blacklining. Because GS was acting as Stafford's agent, seeking legal advice necessary to facilitate the transaction, the Court finds that the document is privileged. PRIVILEGED.

Document 21: An email from GS to Kirkland. The email does not contain legal advice or confidential client information. Therefore, the document must be disclosed. NOT PRIVILEGED/MUST BE PRODUCED.

Document 22: A comparison of a prior draft of a merger agreement with the proposed draft of a merger agreement prepared by Kirkland and sent to other Kirkland attorneys, Stafford and GS.

Because this confidential communication contains legal advice, and was sent to GS as Stafford's agent, the document is PRIVILEGED.

Document 23: Emails between Stafford's key employees and in-house counsel regarding whether certain business information should be disclosed to TD. A review of the information indicates that in-house counsel is forwarding the information so that a business- as opposed to legal - decision can be made. Counsel was neither asked for nor provided legal advice, but was merely forwarding a request made by TD that required what appears to be a business decision. *See Urban Box*, 2006 WL 1004474, at *8 (email from attorney to financial advisor and client advising them of the substance of a communications with opposing counsel not privileged.) NOT PRIVILEGED/MUST BE PRODUCED.

Document 24: In a filing submitted on January 10, 2007, Plaintiffs explained that they have produced a redacted version of this document to Plaintiffs. As redacted, this communication is PRIVILEGED.

Document 25: Plaintiffs contend that this Chart, prepared by Kirkland, was created for the purpose of providing legal advice and that it reflects legal advice, and that it was distributed to Stafford, GS and Sullivan. In his affidavit, Kirkland attorney Robert Hayward explains that the chart is a draft spreadsheet estimating potential distributions under a draft agreement, based

upon his analysis of the terms of the agreement. While the Chart appears to consist entirely of business advice, Mr. Kayward's affidavit statement that the Chart involved legal interpretation of the TD transaction documents is sufficient to convince the Court that the document is privileged. PRIVILEGED.

Documents 26 and 27: Emails with attachments for review from Kirkland to Stafford's in-house counsel, managing directors and GS containing legal advice. PRIVILEGED

Document 28 and 29: Emails from Stafford's managing director to Kirkland, other Stafford officers, and GS seeking legal advice regarding the terms of a promissory note executed in connection with the TD transaction. Including GS in the communications does not destroy the attorney-client privilege, because GS's knowledge of the transaction is relevant to the inquiry. PRIVILEGED.

Document 30: Charts forwarded by human resources to in-house counsel. While a portion of the communication related to forwarding the charts to counsel may be privileged, see Document 24, Plaintiffs have not sufficiently explained why these charts, which contain purely business information, are privileged. NOT PRIVILEGED/MUST BE PRODUCED.

Document 31: An email from Stafford's Managing Director, responding to the email identified in the privilege log as Document 21. As discussed above, the email in Document 21 contains purely business advice and is not privileged. Stafford's

25

Managing Director's response to that email does not impart or request legal advice. NOT PRIVILEGED/MUST BE PRODUCED.

Document 32: An email from GS to Kirkland requesting legal advice regarding an attached term sheet. In addition, the attached term sheet contains Mr. Hayward's handwritten notations. Because GS was acting as Stafford's agent for the purpose of obtaining legal advice, the document is privileged. PRIVILEGED.

Document 33: The document is a Project Choice Term Sheet sent from GS to Kirkland, that is heavily annotated by Kirkland. Plaintiffs have produced to Defendants a copy of this document redacting Kirkland's notations, as well as that content which reflects requests for legal advice. PRIVILEGED.

Document 34: Charts reflecting which employees signed certain types of employment agreements sent by a Stafford human resources employee to Stafford's in-house counsel. As discussed above in Document 30, the charts are not privileged. NOT PRIVILEGED/MUST BE DISCLOSED.

Document 35: Email from Kirkland to Stafford, in-house counsel, and GS seeking information for the purpose of providing legal advice. PRIVILEGED.

Document 36: Email from Kirkland attorney to GS and other Kirkland attorneys regarding the TR/Stafford Structure proposal. GS's inclusion in the communication is clearly as Stafford's agent. PRIVILEGED.

Document 37: Email and attachments from Kirkland to Stafford, GS and other Kirkland attorneys requesting all parties to review and comment on proposed TD transaction documents. PRIVILEGED.

Document 38: Email from Kirkland to Stafford's in-house counsel and key employees seeking information regarding employment agreements for the purpose of providing legal advice. PRIVILEGED.

Document 39: As discussed in Document 30 above, these charts neither reveal, request nor contain legal information. In addition, there is nothing confidential about the communication between counsel and human resources. Nor does the communication contain or reveal legal advice. NOT PRIVILEGED/MUST BE DISCLOSED.

Document 40: An internal Kirkland email forwarding a communication and attachment from a key Stafford employee to Kirkland and other key Stafford employees for the purpose of obtaining legal advice regarding the structure of the businesses as relevant to the TD transaction. PRIVILEGED.

Document 41: An email from Stafford's managing director to in-house counsel and other Stafford employees. The email appears to contain confidential information provided to counsel for the purpose of providing legal advice. PRIVILEGED.

Document 42: Term sheet provided to Kirkland from GS for the purpose of obtaining legal advice. PRIVILEGED.

Document 43: Communications between GS, key Stafford employees, and Kirkland seeking legal advice regarding TD employment

agreements required for the TD transaction, as well as attorney notes. PRIVILEGED.

Document 44: A list forwarded by a Stafford human resources employee to Stafford's in-house counsel. As discussed above in Documents 30 and 39, there is no indication that the information was confidential or represents anything other than a business document. NOT PRIVILEGED/MUST PRODUCE.

Document 45: Communications between key Stafford employees, in-house counsel, Kirkland and GS for the purpose of providing legal advice. PRIVILEGED.

Document 46: This is a memorandum prepared by an unidentified Kirkland attorney (while Robert Hayward identifies the memorandum as being Kirkland's, he does not claim to have authored or reviewed it) proposing revisions to legal document for the TD Transaction. As discussed above, attorney memoranda to file that are not shared with other attorneys or do not reflect confidential client communications are not privileged. NOT PRIVILEGED/MUST BE DISCLOSED.

Document 47: Summary of proposed transaction documents prepared by Kirkland for Stafford's in-house counsel and GS.  PRIVILEGED.

Document 48: Document 48 is a duplicate of Document 39, which the Court has already determined is Not Privileged.  The attorney notes on the document, however, are Privileged.

Document 49: A Project Choice Term Sheet prepared by GS and

28

shared with Kirkland and Stafford's in-house counsel regarding the structure of the TD transaction, which includes in-house counsel's handwritten notes. PRIVILEGED.

Document 50: This is the initial communication identified in Document 48, sans the handwritten notes, which the Court has already determined is not privileged. NOT PRIVILEGED/MUST BE DISCLOSED.

Document 51: Kirkland attorney's handwritten notes reflecting information given to attorney by Stafford for the purpose of obtaining legal advice. PRIVILEGED.

Document 52: Communication from Kirkland to Stafford's key employees, including in-house counsel, and GS requesting that the recipients review the attached documents and provide information necessary to render legal advice. PRIVILEGED.

Addendum Documents: Finally, Plaintiffs submitted to the Court on January 10, 2007, five communications in redacted form. The following communications represent a redacted string of emails between in-house counsel, key Stafford personnel and GS regarding non-compete agreements: Bates Stamp Nos: 18259-18261; 18262-18266; 18255-18258, and 18399-18401. The documents are largely repetitive, representing the progression of the email string. Upon review, the Court agrees that the redacted portion of the emails represents privileged communications and therefore need not be disclosed.

In addition, Plaintiffs have submitted a redacted communication between Kirkland, GS and Stafford. *See* Batos Stamp Nos. STA018386-STA018389. Upon review, the Court finds that the redacted portions of the communication consist of legal advice and are PRIVILEGED.

## CONCLUSION

For the reasons set forth above, Defendants' Motion is granted, in part, and denied in part.

DATE: February 22, 2007        ENTERED:

ARLANDER KEYS

United States Magistrate Judge