**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STAFFORD TRADING, INC. and <br> JOHN S. STAFFORD, JR., <br><br> Plaintiffs, <br><br> v. <br><br> FREDERICK J. LOVELY and <br> CHARLES POKOSKI, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) No. 05 C 4868 <br> ) <br> ) HONORABLE DAVID H. COAR <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER REGARDING JUDGMENT

On February 26, 2007, Magistrate Judge Keys entered a Memorandum Opinion and Order in which he ordered that Plaintiffs Stafford Trading, Inc. ("Stafford") and John Stafford Jr. (collectively, "Plaintiffs") disclose certain documents to the Defendants, Frederick Lovely and Charles Pokoski ("Defendants"). Plaintiffs object to Judge Keys' Order and now seek to have it reversed and the documents declared privileged.

### BACKGROUND

In 2001, Plaintiffs hired Kirkland to advise and assist them in the sale of certain businesses to Toronto Dominion Bank (the "TD transaction"). As part of its engagement, Kirkland performed due diligence on the Stafford businesses and gained important, detailed knowledge about how they functioned and were structured. Stafford and its personnel played a key role in assisting Kirkland in rendering legal advice on the transaction by providing and explaining information required by the attorneys to come to conclusions of law. As a result, Stafford's attorneys communicated regularly with Stafford and its personnel in order to render

-1-

legal advice to Stafford. Stafford's attorneys at Kirkland and Stafford's employees knew that the purpose of their communications was to enable the provision of legal advice and that their communications were to be kept strictly confidential.

## STANDARD OF REVIEW

As Rule 72(a) of the Federal Rules of Civil Procedure provides, a district court will only set aside or modify an order of a magistrate judge pertaining to non-dispositive matters if such order is "clearly erroneous" or "contrary to law." "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

## DISCUSSION

The attorney-client privilege protects confidential communications regarding the seeking of legal advice made by a client to his lawyer and regarding the rendering of legal advice from a lawyer to his client. The privilege extends to documents that record and memorialize such communications as well. However, the attorney-client privilege does not extend to all confidential communications with a lawyer. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003). To fall within the proper parameters of the attorney-client privilege, one asserting the privilege must demonstrate the following eight essential elements of the privilege: "(1) that legal advice was sought (2) from a professional legal adviser in his capacity as such, (3) the communications related to that purpose, (4) were made in confidence (5) by the client (6) were at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8)

except the protection was waived." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). As the party seeking to invoke the privilege, Plaintiffs had the burden of presenting to Judge Keys underlying facts demonstrating its existence. *Anderson v. Torrington Co.*, 120 F.R.D. 82, 85 (N.D. Ind. 1987). Courts determine whether the privilege applies on a document-by-document basis. *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). Although many of the documents at issue here could possibly fall within the work-product doctrine, Plaintiffs have not asserted this doctrine and have therefore waived it.

**Document 2**

The Judge declined to extend the protection of the attorney-client privilege to a portion of Document 2 because he found that Plaintiffs had not carried their burden of demonstrating the existence of the privilege to the complete document. Plaintiffs submitted an affidavit from Rashmi Chandra, who claimed ownership of the memoranda and handwritten notes in Document 2. Chandra is a former associate attorney of Kirkland. Chandra was one of the Kirkland attorneys working on the TD transaction. She engaged in numerous confidential communications of a legal nature with Plaintiffs for the purposes of guiding them through the TD transaction. In her affidavit, Chandra explains that the first memorandum (pages P-STA001628-1634) reflects communications that Kirkland had with Plaintiffs for the purpose of rendering legal advice on the intellectual property aspects of a business transaction. Judge Keys found that the privilege extended to this memorandum. (Mem. Op. & Order, Feb. 22, 2007, at 18.)

Also according to Chandra, the second part of the document (pages P-STA001635-1643) contains two versions of a memorandum that relates to Stafford licensed software. The first

version (pages P-STA001635-1639) is a clean version of the memo that reflects information about Stafford technology and licenses and that was prepared for Chandra's personal use to analyze the issues presented by the TD transaction, and in order to provide Plaintiffs with advice regarding how to structure the sale and transfer of intellectual property in the TD transaction. The second version (pages P-STA001640-1643) of the memorandum contains her handwritten notations reflecting further legal questions that needed to be addressed in order to provide advice to Plaintiffs. Based on the notation in the top left-hand corner of the "document," she believes that her "notes" reflected communications she had with Chris Thomas, a Stafford manager who was involved in the technology aspect of the TD transaction.

Judge Keys first noted that the second part of Document 2 was prepared for Chandra's own use. When a memorandum is prepared for an attorney's own use, it is not a communication. 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 503.14 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed., 1997) (citation omitted) ("A privileged communication is 'any expression' through which a privileged person 'undertakes to convey information to another privileged person any document or any record that embodies such expression.'"). He then correctly recognized that Chandra's statement as to her "belief" was equivocal and unclear. Lastly, he noted that Chandra's reference to her "notes" was extremely vague and was not accompanied by any indication of what part of Document 2 actually constituted her notes. Judge Keys concluded that the evidence Plaintiffs presented did not establish that the attorney-client privilege extended to this portion of Document 2.

In Plaintiffs' view, the pages reflecting Chandra's confidential discussions with Thomas were identified in paragraph 6 of Chandra's affidavit because she explained that the pages

reflecting those notes "contained a notation in the top-left hand corner." *ld.* Plaintiffs explain that the Judge's *in camera* copy of document 2 contained the notation "cthomas" in the top-left hand. Plaintiffs also explain that the second portion of Document 2, contains a clean version of information (P-STA001635-1639) Kirkland & Ellis received from Plaintiffs to analyze legal issues such as the structure of the sale and transfer of intellectual property.

There are several problems with Plaintiffs' evidence. First, the notation "cthomas" only appears on three of the relevant nine pages of Document 2. Second, there is no indication that the notation "cthomas" necessarily means that the information came from Thomas. It is just as likely that the pages reflect Chandra's intent to discuss the pages with Thomas at a later time. Third, Chandra's reference to her "notes" is extremely vague. It did not aid the Judge (nor does it aid this Court) in determining what exactly were her notes. Did she mean the scribbled handwritten text that appears on the second memorandum, P-STA001640-1642? Did she mean the entire document, P-STA001635-1643? One can hardly attribute clear error to the Judge's ruling based on the unclear and vague reference to Chandra's "notes."

Fourth, Chandra's explanation of how the privilege applies here is extremely equivocal. In paragraph 5 of her affidavit, Chandra stated unequivocally that documents P-STA001628-1634 reflected communications between Kirkland & Ellis and Plaintiffs for the purpose of rendering legal advice. In contrast, here in paragraph 6, she equivocates. She states that it is her *belief* that the notes reflected communications between Kirkland & Ellis and Plaintiffs. This equivocation is what primarily motivated the Judge to rule that Plaintiffs did not establish that the document in question was communicated to anyone else or that it reflected memorialized confidential communications.

Lastly, in paragraph 6, Chandra refers to the second part of Document 2 is made up of documents P-STA001635-1639 and P-STA001640-1643. Chandra states that P-STA001635-1639 reflects information about Stafford technology and licenses and that it was prepared for Chandra's personal use to analyze the issues presented by the TD transaction, and in order to provide Plaintiffs with advice regarding how to structure the sale and transfer of intellectual property in the TD transaction. Based upon Chandra's affidavit that P-STA001635-1639 was prepared for her own use, the Judge could not conclude that P-STA001635-1639 even represented a communication, let alone that it issued from the client. Chandra does not state who prepared P-STA001635-1639; she merely states that it was prepared for her personal use. Nor does she state that it was the result of communications with Plaintiffs.

Thus, even though Chandra asserts this document reflected information about Stafford technology and licenses and that its intended use was to help Chandra provide advice to Plaintiffs, Plaintiffs have not established that it comes under the ambit of the attorney-client privilege because they have not demonstrated to the Court that it was 1) obtained from communication and 2) from the client. When Chandra talks about her communications with Chris Thomas, she is clearly discussing only document P-STA001640- 43, the only document with the "cthomas" notation in the upper left corner. To the extent that her affidavit was explaining that both memoranda of P-STA001635-1643 reflected communications with Chris Thomas, the burden was on Plaintiffs to demonstrate as such. They failed to do so and Judge Keys' ruling was neither clearly erroneously or contrary to law when he found this portion of Document 2 was not privileged.

**Documents 30, 34, 39, 44, 48 and 50**

Plaintiffs describe Documents 30, 34, 39, 44, 48 and 50 as related documents that involve a string of emails between Stafford's in-house counsel, Harry Lamberson and Stafford's human resources employees for the purpose of obtaining information related to employment issues to render legal advice relating to the TD Transaction. According to Plaintiffs, the requested information was compiled in a chart at Lamberson's request for purposes of the TD transaction and was not contained as part of Stafford's business records. Therefore, the emails demonstrate that the sole purpose of the charts was to render legal advice related to the TD Transaction.

Document 50 is the initial communication by Lamberson to human resource personnel requesting a list. Plaintiffs contend that Document 50 contains legal advice because it explains the purpose of the list, what information should be contained, and explains that it should be prepared with counsel's (*i.e.,* Lamberson's) consultation. Document 48 contains Document 50, a response from human resources, a list and some handwritten notes of an attorney. The Judge determined that the handwritten notes written on this document were privileged. Document 44 is a list forwarded to Stafford's in-house counsel from a human resources employee. Document 39 contains Document 50, an updated response from human resources, and an updated list. Document 34 contains the same list from Document 39. Finally, Document 30 contains another list of employees.

The Judge ruled that these documents contained either explicitly contained mere business information (except the notes of counsel in Document 48) or Plaintiffs failed to sufficiently explain why the privilege did not extend to them. There is no doubt that all of these lists and correspondence either reflect communications or are the products of communications by and

among Stafford's in-house counsel and employees of Stafford. Plaintiffs state that all of these communications were made with the expectation and knowledge that counsel would use them to render legal advice. In support, Plaintiffs provided the affidavit of James Griffin, its other in-house counsel who worked with Lamberson at Stafford at the time of the TD Transaction, in which Griffin explains that the lists were created at Lamberson's request to provide counsel with "information necessary to advise the Stafford businesses on what representations and warranties Stafford could make in the various agreements necessary to close the TD Transaction."

The Judge found that these communications and lists contained pure business information. Plaintiffs have not pointed to anything that supports their argument that the Judge was clearly erroneous or ruled contrary to law. Aside from the attorney's handwritten notes on Document 48 (which the Judge found to be privileged), nothing within these emails and lists contains discussion of legal issues or strategy. Plaintiffs disagree and contend that the text of the emails proves that Stafford did not maintain these lists in the ordinary course of business and that the sole purpose of the lists was to render legal advice regarding the transaction. Plaintiffs are incorrect on both issues.

The information was kept by Stafford in the ordinary course of business because employees were able to access it and manipulate it into a list that satisfied Lamberson's request. But this fact is irrelevant to the determination of whether the attorney-client privilege exists. Plaintiffs do not cite to any authority for the proposition that documents prepared at the request of counsel that do not contain information kept in the ordinary course of business are *per se* privileged. Second, the ordinary business characterization is only relevant when a court is attempting to infer from surrounding circumstances whether a document was prepared in

anticipation of litigation. When determining whether a document had an expressly and solely legal purpose, courts will look to see if a document was prepared in anticipation of litigation. *See United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999). The circumstances of this case have nothing to do with impending litigation. Here Plaintiffs assert the documents were prepared strictly for a business transaction not litigation. Although attorneys can (and do) provide legal services outside of the traditional litigation model, no other legal services were implicated in regard to these specific documents at issue.[1]

The attorney-client privilege protects documents given to an attorney for the attorney's use in rendering legal advice as well as documents that reflect confidential communications between the lawyer and client. *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). "Information transmitted to an attorney or to the attorney's agent is privileged if it... was given to the attorney for the sole purpose of seeking legal advice." *Frederick*, 182 F.3d at 500. Thus, in the case of documents that are prepared for a lawyer to render legal advice, the privilege applies. Conversely, the privilege does not apply to documents prepared for a lawyer to submit to others outside of the lawyer-client relationship. *Lawless*, 709 F.2d at 487 (citation omitted). The Court in *In re Grand Jury Proceedings* explained that "when the circumstances suggest that a document might be privileged, it is important that the district court consider the totality of those circumstances in making its determination as to whether the privilege must be recognized." 220 F.3d at 572.

---

[1] For instance, transactional attorneys often view various certified statements made by the business people and disclosure schedules before rendering their all-important opinions, which are usually necessary to close transactions. Neither Plaintiffs nor their affiants have asserted that this was the case here with these specific documents.

Here, it is not clear from the *in camera* review of the list Lamberson requested from Stafford human resources personnel that it was intended to aid Lamberson in rendering legal advice. But it is explicitly clear that these lists were intended to be turned over to TD in satisfaction of due diligence requirements for the transaction. The attorney-client privilege does not apply to information that is transmitted to an attorney with the intent that the information will be transmitted to a third party. *Lawless*, 709 F.2d at 487 (citation omitted). Such information is not intended to be confined to the attorney-client relationship and is therefore not confidential. Therefore, Judge Keys did not rule erroneously or contrary to law.

**Document 46**

Document 46 (P-STA0000742-P-STA0000748) is a memorandum prepared by an unknown Kirkland attorney. Plaintiffs take the position that this memorandum reflects communications between Kirkland and Plaintiffs regarding the TD Transaction for the purpose of seeking/rendering legal advice. Judge Keys described this same document as a memorandum to file. Robert Hayward, a Kirkland attorney, submitted an affidavit in which he states that Document 46 is a memorandum that contains "suggestions for the revision of TD's proposal to acquire the Stafford entities." Memoranda to file are by their very nature not communications because they are not directed to anyone in particular. So unless they record attorney-client communications that are otherwise protected by the attorney-client privilege, such memoranda are not protected by the attorney-client privilege. *See* 8 J. Wigmore, Evidence § 2292 (MacNaughton rev. 1961). There was no identified author or recipient of this memorandum, so the Judge was left with the inference that it was merely a memorandum to file containing suggested revisions. There is no indication that this memorandum was ever shared with anyone,

nor is there any indication that its contents reflected communications between Kirkland and Plaintiffs. While the memorandum contains some language to suggest it could be directed to someone else, this Court is not persuaded that the Judge was clearly erroneous when he inferred that it was a memorandum to file. Plaintiffs had the responsibility of clearly demonstrating to the Judge that the privilege existed. Judge Keys did not rule clearly erroneously or contrary to law when he found that the attorney-client privilege did not extend to this document.

## CONCLUSION

For the reasons stated above, this Court shall not modify or set aside the Order of Magistrate Judge Keys in any respect as it is not clearly erroneous nor contrary to law.

/s/ David H. Coar
David H. Coar
United States District Judge

**Dated:** April 26, 2007