**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **STAFFORD TRADING, INC. and JOHN S. STAFFORD, JR.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| | ) | **No. 05 C 4868** |
| **v.** | ) ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **FREDERICK J. LOVELY and CHARLES POKOSKI,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are two motions brought by Plaintiffs and Counter-Defendants Stafford

Trading, Inc. and John S. Stafford, Jr. ("Stafford") against Defendants and Counter-Plaintiffs

Frederick J. Lovely and Charles Pokoski ("Defendants"). Stafford filed a Motion for Summary

Judgment on Count I of the Compliant and Counts I through VIII of the Counterclaim pursuant

to Rule 56 of the Federal Rules of Civil Procedure. Stafford also filed a Motion to Dismiss the

Counterclaim pursuant to Rules 12b(6) and 12(b)(7). Stafford has incorporated its previous

Motion to Dismiss into its Motion for Summary Judgment. For the reasons stated below,

Stafford's Motion for Summary Judgment is DENIED and its Motion to Dismiss is partially

DENIED and partially GRANTED.

## FACTUAL BACKGROUND

*Undisputed Facts Taken from the Parties' Statements' of Fact*

A. Development of RIVAS

This dispute involves the ownership of RIVAS, a system of pricing models that consists

of several interconnected software applications used to price and trade equity derivatives and manage trading risk. Defendants worked with Stafford to develop and trade with RIVAS. Defendant Lovely began working with Stafford in 1996 as a trader. Defendant Pokoski began working with Stafford in 1997.

"RIVAS" stands for Realtime Integrated Volatility Arbitrage System. It is an electronic options trading platform consisting of numerous software applications written primarily in the computer language C++ computer programming language. Defendant Lovely did not write any code for any part of RIVAS; he simply provided ideas and methodologies for RIVAS. Defendant Pokoski also provided ideas and mathematical formulas or algorithms used in RIVAS, especially with respect to the GUTS model, which is one of several models that make up RIVAS.[1] Although Stafford asserts that Pokoski did not write any of the code used in RIVAS, it is undisputed that Pokoski wrote algorithms for GUTS in the C computer programming language and provided that pseudocode to a software developer, Thomas Vonderhaar, who translated the C code into C++ programming language and then added more code in the C++ language for GUTS and RIVAS. Linda Doloc also contributed substantially to the finalized C++ code that was actually used in the finalized GUTS model and RIVAS system. An expert in computer languages, Stuart Okorofsky, declares on behalf of the Defendants that one cannot properly assume that the translation of C into C++ necessarily changes the underlying expression and that the C language is a subset of the C++ language.

B. Confidentiality

---

[1] Despite their frequent use of the term "model", neither party has offered a precise definition of it.

Numerous Stafford employees worked on different portions of RIVAS and several employees exchanged e-mails and documents discussing RIVAS and the GUTS model. Most of these documents were not labeled "Confidential." Of the documents that were labeled "confidential," they were clearly labeled confidential as to Stafford, not to any partnership between Stafford and the Defendants. The Defendants also provided documents related to RIVAS to numerous Stafford employees, and later to TD Bank representatives (before the sale), without asking any of those persons to sign a confidentiality agreement.

C. Sale to TD Bank

At the end of February 2002, Stafford sold a portion of its trading operations and all of its technology, including RIVAS, to The Toronto-Dominion Bank ("TD Bank"). At that time Lovely and Pokoski took jobs with an affiliate of TD Bank, TD Options, LLC ("TDO"). Three and one-half years later, Lovely stopped working at TDO. Soon thereafter, in August, 2005, Lovely and Pokoski approached Stafford Jr. and claimed that they were entitled to further proceeds that Stafford had received from the sale of RIVAS, based on an oral partnership agreement with Stafford Jr. Stafford filed the instant action for a declaration that Lovely and Pokoski had no rights in RIVAS and no right to any proceeds attributable to the sale of RIVAS. In Count I of the Complaint, Stafford alleges that RIVAS is copyright subject matter governed by the Copyright Act and that defendants own no intellectual property rights in RIVAS.

At the time of the transaction between TD Bank and Stafford, Defendants accepted employment with TDO. In June or July of 2005, Lovely stopped working at TDO. A few weeks later, they approached Stafford and informed Stafford, Jr. of their beliefs of entitlement to 50% of the proceeds from the sale of RIVAS to TD Bank. Stafford then filed this action, seeking,

inter alia, a declaration that Defendants owned no rights to RIVAS and are not entitled to any of proceeds from the sale of RIVAS to TD Bank.  Defendants filed a Counterclaim, which alleges, among other things, that Stafford Jr. breached an oral partnership agreement with them, that he misappropriated their trade secrets, that they are entitled to a declaration that they own all copyrights in RIVAS, and that Stafford violated several non-federal rights arising from state common law fro which they are entitled damages and restitution.

Defendants allege that in 1998, they entered into a partnership agreement with Stafford for the purpose of developing a proprietary and confidential trading system to eventually be licensed or sold.  No written partnership agreement was ever drafted.  Defendants show that Stafford has a history of entering into oral agreements in regard to options trading but they do not offer any evidence that Stafford has ever entered into oral agreements to develop, license or sell computer software.  Defendants allege that the terms of the oral partnership agreement are as follows: 1) Defendant Lovely agreed to contribute his trading methodologies and strategies to the partnership in exchange for 50% of the profits of the partnership and Stafford's agreement to fund the activities of the partnership;  2) Defendant Lovely later agreed with Defendant Pokoski to share 50% of his partnership interest with Stafford if Pokoski would contribute his trading methodologies to the partnership;  3) the parties used RIVAS to trade; and 4) a Stafford controlled limited liability company called JSS Investments, LLC, was utilized to generate and distributed profits of the partnership.  Defendants also allege that from 1998 through 2002, Defendant Pokoski directed the development of several server components of RIVAS.

Defendants allege further that Stafford made false material statements of fact and omitted material facts in the effort of fraudulently inducing Defendants to not enforce the terms of their

alleged partnership as relates to the splitting of profits from RIVAS.  They also allege that

RIVAS is a methodology made of trade secrets and that Stafford misappropriated the trade

secrets by denying the existence of the partnership, by claiming ownership of the trade secrets

and by claiming the right to sell the trade secrets without giving Defendants their proper share

from the sale of RIVAS.

D. Computer Program or Methodology?

Stafford and TD Bank executed a Master Purchase Agreement as part of the sale

transaction.  In it, Stafford did not disclose therein any copyright registrations and applications

as required by section xxv of the Amended and Restated Master Purchase Agreement.  Instead,

Stafford listed RIVAS as a planned method patent application in the intellectual property

schedule to the Master Purchase Agreement.  Furthermore, in a purported assignment of RIVAS

from Jerome Nelligan, Jr. to Stafford Trading, Inc., RIVAS is described as "an invention

comprising certain new, useful, and nonobvious improvements in the system and method for

real-time options contract price calculations and manipulations."  In the assignment, Nelligan,

Jr.,  states that RIVAS has been described or will be described in a patent application that will be

filed with the United States Patent and Trademark Office.  In a selling memorandum drafted by

Stafford to give prospective transaction partners necessary information about Stafford's assets,

RIVAS is described as a methodology made up of various models and applications (such as

Monstor) that combine sophisticated algorithms with server infrastructure.

**STANDARD OF REVIEW FOR MOTION FOR SUMMARY JUDGMENT**

Summary judgment is only appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it can affect the outcome of the case under the applicable substantive law. *Id.* When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003).

The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324. To successfully oppose the motion, the non-movant must designate these facts in affidavits, depositions, answers to interrogatories, or admissions; the non-movant cannot rest on the pleadings alone. *Celotex*, 477 U.S. at 324.

## ANALYSIS

### I. Count I of the Complaint

The parties dispute the characterization of RIVAS. On one hand, Stafford claims RIVAS is a computer program that is made up of numerous software applications written primarily in the C++ computer language. "A 'computer program' is a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." 17 U.S.C. § 101. Computer programs are subject to copyright protection as they are capable of embodying original works of authorship. *Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*, 307

F.3d 775, 779 (9th Cir. 2002). On the other hand, Defendants claim RIVAS is only a methodology mad up of trade secrets consisting of mathematical algorithms and sophisticated pricing models. Unlike computer programs, methodologies are not subject to protection under the Copyright Act. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.").

Whether RIVAS is a "computer program" or a "methodology" is a question of fact. Thus, for this Court to define RIVAS on this motion for summary judgment, the Court must first determine whether there is sufficient evidence for a reasonable jury to find RIVAS is a methodology or a computer program.

Defendants point to Stafford's failure to disclose any copyright registrations and applications as required by the Master Purchase Agreement entered into between TD Bank and Stafford, as evidence of Stafford's treatment of RIVAS as a noncopyrightable methodology. Defendants also show that Stafford listed RIVAS as a planned method patent application in the intellectual property schedule to the Master Purchase Agreement. Furthermore, in a purported assignment of RIVAS from Jerome Nelligan, Jr. to Stafford Trading, Inc., RIVAS is described as "an invention comprising certain new, useful, and nonobvious improvements in the system and method for real-time options contract price calculations and manipulations." In the assignment, Nelligan, Jr., states that RIVAS has been described or will be described in a patent application that will be filed with the United States Patent and Trademark Office. Lastly, Defendants offer the description of RIVAS that appears in a selling memorandum drafted by Stafford to give

prospective transaction partners necessary information about Stafford's assets. RIVAS is described in the selling memorandum as a methodology made up of various models and applications (such as Monstor) that combine sophisticated algorithms with server infrastructure. In sum, there is evidence that RIVAS is a methodology, as the Defendants argue.

But there is also evidence that RIVAS is in fact made up of several computer programs. One of the components of RIVAS is the so-called GUTS pricing model. Stafford concedes that Charles Pokoski wrote some initial code for the GUTS model in C language. The C language is a computer language. Computer languages are also known as programming languages because programmers write code in specific languages to direct a computer to perform certain tasks and operations to achieve certain results. The undisputed facts demonstrate that Charles Pokoski wrote an initial computer program in the C language for the GUTS pricing model. Stafford states that Pokoski does not know if any of the initial code that he wrote in C language was written into C++ language and included in the final RIVAS system sold to TD Bank. That may be so. But it is nonetheless clear that Charles Pokoski was the author of an initial code written in the C programming language. As such, he was also the owner of that code. Title 17 U.S.C. § 201(a) states that "[c]opyright... vests initially in the author or authors of the work."

It is undisputed that Pokoski wrote certain mathematical algorithms into code in the C language for the GUTS system and then provided that code to a software developer, Thomas Vonderhaar, who translated it into the C++ programming language with the assistance of Pokoski. Therefore, although some describe RIVAS using the terms "model" and "system" it is clear that RIVAS contains a computer program written in C++ programming language, with some language possibly in C. Whether that expression in the GUTS system is copyrightable

-8-

depends on the extent of the merger of the ideas and the expression. *See Lexmark International, Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 535 (2004). The merger doctrine states that in those computer programs where the specific words utilized in the expression are essential to the statement of the idea or where there is only one or a few ways to express the idea, copyright protection does not exist. *Id.* There is no evidence of the extent to which the Defendants' ideas are merged with the expression of the ultimate code contained in the GUTS model of the RIVAS system. Furthermore, the question of differentiating idea from expression is a question of fact. *See eScholar, LLC v. Otis Educational Systems, Inc.*, 2005 WL 2977569 at *18 (S.D.N.Y. 2005) (citation omitted).

This Court finds that there is insufficient evidence from which it can conclude that RIVAS in toto, is a computer program or a trade secret methodology. Neither party has even briefed the issue of what effect a dichotomous characterization of RIVAS would have on the ownership of RIVAS prior to the sale. Whatever RIVAS is, it is undisputed that one of its components is the so-called GUTS model and that Pokoski played some part in its creation. Based on the facts presented, this Court also cannot find that Pokoski had no authorship (and thus ownership) in the GUTS model of the RIVAS system. Title 17 U.S.C. § 201 states in relevant part that "[c]opyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are co-owners of copyright in the work."

Stafford asserts that Defendants only contributed ideas and algorithms to the development of RIVAS, and specifically the GUTS model. Ideas are not afforded copyright protection, only the expression of those ideas are copyrightable. *Lexmark International, Inc.,* 387 F.3d at 534 (2004) (citing *Mazer v. Stein*, 347 U.S. 210, 217 (1954)). Algorithms, sets of

procedures for solving problems, are not afforded copyright protection either. *CCC Info. Servs. v. MacLean Hunter Mkt. Reports*, 44 F.3d 61, 72 n.22 (2nd Cir. 1994). But Pokoski did not merely provide ideas and algorithms, he expressed those algorithms into a code written in the C programming language. Vonderhaar then translated that code into C++ programming language. A computer program's object code and source code are subject to copyright protection. *Lexmark International, Inc.*, 387 F.3d at 534. Defendants offer the declaration of Stuart Okorofsky, an independent computer programmer who holds a bachelor's degree in computer science and has fourteen years of experience with various computer languages, for his opinion that one cannot assume that the translation of C into C++ necessarily changes the underlying expression and that the C language is a subset of the C++ language. Stafford has not offered anything to refute Okorofsky's assertion.

Title 17 U.S.C. § 201(b) states in relevant part that "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." Whether Pokoski was an employee of Stafford or his partner is another disputed question of fact that is much more fit for a jury to decide than this Court.

On the employment issue, Lovely and Pokoski claim they are not employees. Instead, they view themselves as partners to Stafford and they argue that they had an oral partnership agreement. In the excerpts of the deposition testimony of Lovely and Pokoski provided by both parties, both Defendants concede to working with Stafford in various capacities but they do not admit to being employees. While it is extremely strange that Lovely and Pokoski would accept

employment with TDO as a condition for the closing of the TD transaction, if they were indeed

partners to Stafford, based upon the facts included in the Local Rule 56 Statements of Facts and

the evidence presented in support of those facts, this Court is unwilling to find as a matter of fact

that Defendants were employees of Stafford's rather than partners.

In conclusion, this Court cannot find that ownership of RIVAS is governed by the

Copyright Act because there are insufficient facts for this Court to find that RIVAS, in whole, is

a computer program. Moreover, based on the facts presented in the various declarations of

Stafford employees, this Court declines to find that Pokoski did not author any part of the GUTS

model of RIVAS. This Court also declines to make a finding as to the employment status of the

Defendants.[2] Stafford's motion for summary judgment is therefore denied on the issue of

whether Defendants owned any rights in RIVAS prior to the sale to TD Bank.[3]

## II. The Counterclaim

### A. Counts I, II and VII

Summary judgment is also denied as to Count I, II and VII of the Defendant's

Counterclaim. Count I is entitled "Breach of Partnership Agreement" and is premised upon the

---

[2] In the Complaint (¶31), Plaintiffs make mention of an Employee Confidentiality Agreement in which Defendants agreed that all rights in any developments and inventions belonged to Stafford and that Defendants assigned to Stafford all rights in intellectual property they may have had during their employment. This Court has not found a copy of any such agreements or assignments signed by the Defendants in any of the exhibits referred to in Stafford's Appendix of Exhibits accompanying its Local Rule 56 Statement of Facts and therefore, declines to consider it now.

[3] Defendant Lovely conceded that he did not write any of the code for the GUTS model. Thus he cannot be deemed an author (or owner of that computer program). However, because this Court declines to find RIVAS is subject to copyright protection under the Copyright Act based on the facts presented, Lovely may still have had an ownership interest in RIVAS prior to the sale to TD Bank based on a theory of ownership not related to copyright.

existence of a partnership agreement. This Court has declined to find there was or was not a partnership agreement on this record. Count II is entitled "Promissory Estoppel" and is premised upon Stafford's alleged statements to Defendants regarding the existence of a partnership and the compensation they would receive in exchange for their parts in developing and refining RIVAS. This Court expresses no opinion on whether such statements were ever made as this is a disputed fact. Count VII is entitled "Copyright Declaration" and is premised upon a finding that RIVAS is copyrightable. If RIVAS is copyrightable, then the Copyright Act would apply and its provisions on ownership and transfer of ownership would obviate Defendants' ownership claims. Since all of Stafford's arguments that these claims be dismissed all hinge, in one way or another, upon this Court finding that RIVAS was subject to copyright protection under the Copyright Act and this Court has found that there is insufficient evidence form which it can determine whether RIVAS is copyrightable, dismissal of Defendants' claims at this point would be inappropriate.

### B. Count III

Count III is based on the theory that Stafford misappropriated Defendants' trade secrets under Illinois statutory law. The Illinois Trade Secrets Act forbids the misappropriation of trade secrets. 765 Ill. Comp. Stat. 1065/2. Stafford argues that Defendants have not established that their ideas and algorithms are even subject to protection under this law because they cannot show that they took any affirmative measures to keep their information secret.

It is a statutory requirement that one claiming the misappropriation of a trade secret must demonstrate that the information at issue was subject to efforts that were reasonable under the

circumstances to maintain its secrecy or confidentiality.[4]  765 Ill. Comp. Stat. 1065/2(d); *Arcor,*

*Inc. v. Haas,* 842 N.E.2d 265, 269 (Ill. App. Ct. 2005).  Stafford contends that Defendants failed

to take any affirmative reasonable steps to protect the secrecy of their information.  In support of

that contention, Stafford points to Defendants' sharing of their ideas and algorithms with

outsiders of the alleged partnership, namely Stafford's employees.  Defendants argue that they

understood Stafford to be maintaining the confidentiality of the information amongst his

employees.  Pokoski states that he personally limited exposure of the information to those

Stafford employees whose input was necessary to development of the ultimate product.

It is illogical to conclude that the Defendants failed to take reasonable steps to maintain

secrecy by sharing the relevant information with Stafford's employees when they allege that

Stafford was their business partner and Stafford acknowledges that it required its employees to

sign confidentiality agreements.  Stafford states that in *Leibert Corp. v. Mazur*, an Illinois

appellate court supposedly held that restricting access to information on a need-to-know basis

was insufficient to satisfy the demonstration of reasonable affirmative steps.  827 N.E.2d 909,

923 (2005).  Stafford is incorrect.  What troubled the Court in *Mazur*, was the fact that none of

the employees who received the confidential information were required to sign confidentiality

agreements.  Here, Stafford required its employees and prospective purchasers, including TD

Bank, to sign confidentiality agreements and Defendants relied, perhaps naively, on this.

Stafford also argues to this Court that reliance on an oral partnership agreement is

---

[4] Stafford does not address the other statutory requirement that one asserting a trade
secret must demonstrate that the information was sufficiently secret to confer an economic
competitive advantage over those not in possession of the information.  Therefore, the Court will
assume Defendants have done so for purposes of adjudicating this motion.

insufficient to constitute a reasonable step in the absence of an express restrictive covenant when there is no indication of the duration of the partnership. *See Southwest Whey, Inc. v. Nutrition 101, Inc.*, 117 F.Supp.2d 770, 779 (C.D. Ill. 2000). Defendants counter that the alleged partnership implies that Stafford had a duty not to share confidential information with those outside the partnership and employees of a partner are not considered outside the partnership. Regardless of what either party states is a reasonable step to protect secrecy, the Seventh Circuit has explained that "[w]hether the measures taken by a trade secret owner are sufficient to satisfy the Act's reasonableness standard ordinarily is a question of fact for the jury." *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 725 (7th Cir. 2003). Stafford concedes that the Defendants identified at least one affirmative reasonable step, therefore there is a genuine issue of material fact from which a jury will determine the reasonableness under the circumstances and summary judgment is inappropriate.

### C. Preemption of Counts II, IV, V, VI and VIII

Chapter 725 Ill. Comp. Stat. 1065/8 explicitly states that the Illinois Trade Secrets Act "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of [Illinois] providing civil remedies for misappropriation of a trade secret." In *Hecny Transp., Inc. v. Chu*, the Seventh Circuit explained that "claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets." 430 F.3d 402, 404-05 (2005) (citation omitted). Thus, preemption does not apply to "duties imposed by law that are not dependent upon the existence of competitively significant secret information." *Id*. at 405 (quotation omitted).

*Count II- Promissory Estoppel*

In Illinois, a proper claim of promissory estoppel generally consists of factual assertions that the defendant made an unambiguous promise to the plaintiff; the plaintiff relied on this promise; the plaintiff's reliance was expected and foreseeable by the defendant; and lastly, the plaintiff relied on the defendant's promise to his detriment. *Jago v. Miller Fluid Power Corp.*, 615 N.E.2d 80, 83 (Ill. 1993). Here, Defendants' claim is premised upon the existence of Stafford's alleged promise to pay them one-half of the value of any ultimate sale or licensing of RIVAS, in exchange for access to their trade secrets, *as well as their acquiescence in the sale of RIVAS to TD Bank*. (Counterclaim, ¶¶ 78-81.)

In *Hecny Transportation, Inc.*, the Seventh Circuit explained that assertion of a trade secret did not "wipe out claims of theft, fraud, and breach of the duty of loyalty that would have been sound" even if the object claimed to be a trade secret was not in fact a trade secret. 430 F.3d at 405. Thus, even though this Promissory estoppel claim contains the assertion of trade secrets, the characterization of the information provided to Stafford by the Defendants as trade secrets is absolutely unnecessary to the viability of the Promissory estoppel claim itself. In other words, had the Defendants simply pleaded that "Stafford promised us to pay half of any money he received for using our information" the claim would still be valid. Thus, this claim is not preempted by the ITSA.

*Count IV- Breach of Fiduciary Duty*

This claim is premised upon Stafford violating a fiduciary duty he owed the Defendants as an alleged partner. In Illinois, a fiduciary relationship exists between the partners and embraces all matters relating to the partnership business; each partner is bound to exercise the utmost good faith and honesty in all dealings and transactions relating to the partnership. *Couri*

*v. Couri*, 447 N.E.2d 334, 337 (Ill. 1983) (citation omitted). Defendants claim that Stafford

violated his fiduciary duty to the alleged partnership by misrepresenting and concealing the

value of RIVAS and the amounts TD Bank paid to Stafford. Therefore, this claim is not

dependant upon the existence of a trade secret and is not preempted by the ITSA.

*Count V- Fraud*

Defendants claim that Stafford committed fraud by intentionally making false material

statements to them upon which they relied. After listing out specific statements that contain the

basis of the alleged fraud, Defendants make the following statement:

> Stafford made the representations and omissions set forth in the preceding
> paragraphs to induce Lovely's and Pokoski's reliance thereon and to induce
> Lovely and Pokoski into a false sense of security about the details of *the sale of*
> *the trade secrets* and other assets of the partnership to the TD Bank.

(Counterclaim, ¶ 96 (emphasis added).) Stafford contends that when the facts relating to the

breach of the common law claims are inextricably linked to the trade secret claim, such common

law claims are preempted by ITSA. *Lucini Italia Co. v. Grappolini*, 2003 WL 1989605 at *22

(N.D.Ill. 2003). "Decisions of federal district courts on issues of state law have neither

authoritative nor precedential force...," *Hecny Transp., Inc.*, 430 F.3d at 404-05. But the

Court's discussion of inextricable linkage is really just another way to state that when a common

law claim rests on the same facts that support the misappropriations claim, it is preempted. *Id*. at

405. In paragraph 87 of the misappropriations claim, Defendants state that Stafford

misappropriated trade secrets by claiming ownership of them and by claiming the right to sell

them without paying them their one-half share. In Count V of the Counterclaim, paragraph 94,

Defendants pleaded that Stafford (the individual) made the following statement (amongst other

statements) : " (a) That, if Lovely and Pokoski would contribute their RIVAS trade secrets and

software to a partnership with Stafford, Stafford would pay them one-half of the value received by Stafford for RIVAS;...".  Thus, it is clear that the facts upon which Defendants base their fraud claim are the same facts upon which the rest their misappropriations claim.  It is therefore preempted by the ITSA.

Stafford also argues that Defendants have failed to state a fraud claim because they have failed to plead with particularity as required by Federal Rule of Civil Procedure 9(b).  According to the Seventh Circuit's explanation of the particularity requirement, to properly plead fraud, the Defendants must include in the allegations factual assertions relating to "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992) (citations omitted).  Essentially this means that Defendants were required to plead the 'who, what, when, where, and how' of the alleged fraud.  *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

In Count V of the Counterclaim, Defendants pleaded that Stafford (the individual) made the following statements:

> (a) That, if Lovely and Pokoski would contribute their RIVAS trade secrets and software to a partnership with Stafford, Stafford would pay them one-half of the value received by Stafford for RIVAS;
> (b) That, if Lovely and Pokoski continued to work regarding the development and implementation of RIVAS – including bypassing guaranteed offers of several million dollars (to Lovely) -- they would receive 50 percent of the proceeds of the sale of RIVAS;
> (c) That, if Lovely and Pokoski worked with Stafford in conjunction with marketing and explaining RIVAS to potential buyers such as the TD Bank, they would receive 50 percent of the proceeds of the sale of RIVAS;
> (d) That, if Lovely and Pokoski would sign on as TDO employees at a salary rate substantially below what they had been earning so that the TD

Transaction could close, Stafford would pay to Lovely and Pokoski one-half of the amount he received for RIVAS from the TD Bank;

(e) That, if Lovely and Pokoski would accept forgivable loans from TD well below the value of their half interest in RIVAS, Stafford would pay the balance of their half of the amount he received for RIVAS from the TD Bank to Lovely and Pokoski following the closing of the TD Transaction;

(f) That the forgivable loans provided by TDO were part of the proceeds they would receive for payment for their one-half interest in RIVAS;

(g) That, if Lovely and Pokoski would allow him to take care of all of the details associated with transferring RIVAS to the TD Bank (including procurement of legal counsel to represent them at closing), Stafford would pay to Lovely and Pokoski one-half the amount he received for RIVAS from the TD Bank;

They also pleaded that Stafford intentionally concealed several material facts, including, but not limited to:

(a) Stafford had only hired counsel to look out after his individual interests rather than that of Stafford's, Lovely's and Pokoski's partnership or the individual interests of Lovely or Pokoski;

(b) Stafford had negotiated a payment in excess of $125 million associated with sale and purchase of RIVAS rather than the $7.0 million Stafford falsely represented to Lovely and Pokoski following the closing.

Therefore, Defendants pleaded the "who" and "what" elements of the fraudulent circumstances. As to the rest of the requirements, after parsing through the seventy paragraphs of the Counterclaim that were incorporated and realleged in the first paragraph of this count, the Court is still left without an understanding of when Stafford made these statements, where he made them, and how he made them. Such pleading is much too vague to satisfy the heightened pleading requirements of Rule 9(b). Therefore, Count V could also be dismissed for failure to comply with the requirements of Rule 9(b).

*Count VI- Fraudulent Concealment*

Generally a claim of fraudulent concealment requires (amongst other things) a plaintiff to plead that a defendant concealed material facts under circumstances that created a duty to speak; the defendant intended to induce a false belief; the plaintiff could not have discovered the truth

through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's omission as a representation that the fact did not exist; the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and lastly, the plaintiff's reliance resulted in damages. *Bauer v. Giannis*, 834 N.E.2d 952, 957-58 (Ill. App. Ct. 2005). Defendants allege that due to the partnership relationship, Stafford had a duty to disclose to them his belief that he alone owned RIVAS. They do not allege that they were harmed because Stafford believed RIVAS consisted of trade secrets or that Stafford believed he owned their trade secrets. Thus, this claim is not preempted by the ITSA.

However, Defendants plead that the material fact that Stafford unduly withheld from them is his belief that he owned RIVAS. (Counterclaim, ¶¶ 100-102.) Nowhere in this entire Count VI do the Defendants assert when this supposed duty to inform them allegedly arose. Throughout Count VI, Defendants make mention of "material facts" but they fail to mention what those facts are (other than Stafford's belief that he owned RIVAS). An allegation of fraudulent concealment must be pled with specificity. *See Jones v. Hoosman*, 2006 WL 1302524 at *2 (N.D.Ill. 2006) (collecting cases). A fact is material if it would have induced the other party to act differently had she been aware of it. *Perlman v. Time, Inc.*, 380 N.E.2d 1040, 1046 (Ill. App. Ct. 1978).

Another problem with this claim is that it is unclear whether an omitted expression of belief or opinion can ever constitute an "omission of material fact" in a fraudulent concealment action under Illinois law. In the context of pure fraud, a belief or opinion generally cannot constitute a "material representation" such that one who makes that representation can be found

liable. *Peterson Industries, Inc. v. Lake View Trust and Sav. Bank*, 584 F.2d 166, 169 (7th Cir. 1978) (citing *Metropolitan Bank and Trust Co. v. Oliver*, 283 N.E.2d 62, 64 (Ill. App. Ct. 1972)). An exception to this rule is where the circumstances suggest that the plaintiff may have justifiably relied on the opinion as though it was a statement of fact. *Perlman*, 380 N.E.2d at 1046. Further complicating this action is the fact that Defendants do not state when Stafford's duty to disclose his belief arose. Perhaps it arose in 1998 when the alleged partnership was supposedly formed. But RIVAS did not exist at that point, so it is unclear whether Stafford would have expressed an opinion as to who owned it.

In conclusion, this claim is could be dismissed because the Defendants have not pled it with the specificity required by Rule 9(b). However, the Defendants based this claim upon Stafford's alleged failure to disclose his opinion. Statements of opinion or belief are not equivalent to statements of fact. Fraudulent concealment claims are based upon failures to disclose material facts. Therefore, Count VI is dismissed because the Defendants have failed to state a legally cognizable claim.

*Count VIII- Unjust Enrichment*

This claim is based upon the theory that Stafford has been unjustly enriched by its incorporation of Defendant's trade secrets into RIVAS, even if Stafford has a copyright in any RIVAS software. Here, it is clear from what Defendants have pleaded that the conduct for which they complain rests on the misappropriation of the trade secrets. Thus, there is no need to await the finding of a trade secret because Defendants have explicitly mentioned the inclusion of their trade secrets as the source of Stafford's alleged unjust enrichment in this claim (Counterclaim, ¶ 110) and the misappropriation of trade secrets under ITSA in Count III. This

claim is preempted by the ITSA.

### III. Failure to Join a Necessary Party

Stafford argues in its motion for summary judgment (as well as its motion to dismiss) that the Defendants' counterclaim must be dismissed, pursuant to Federal Rules 12(b)(7) and 19(b), because they failed to join TD Bank and TDO, who, according to Stafford, are necessary and indispensable parties to this action because they currently own RIVAS. Defendants respond that neither TD Bank or TDO are necessary or indispensable parties. Federal Rule of Civil Procedure 19 provides a two-step analysis in deciding whether to dismiss an action for failure to join an absent party.

First, Rule 19(a) provides a framework for deciding whether a given person or party should be joined. This question has been commonly analyzed as whether the unjoined party is "necessary." Second, if joinder is called for, then Rule 19(b) guides a court in deciding whether the suit should be dismissed if that person cannot be joined. This question has been commonly analyzed as whether this necessary party is "indispensable." *Darush v. Northern Trust Company*, 1996 WL 99903, *1 (N.D.Ill. Feb.29, 1996) (citing *Pasco International (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 507 n. 13 (7th Cir.1980); *Krueger v. Cartwright*, 996 F.2d 928, 933 (7th Cir.1993)). Specifically, Rule 19(a) provides that a party must be joined in an action if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest.

Fed.R.Civ.P. 19(a).

Both Stafford and Defendants concede that TD Bank and TDO bought, own and are currently using RIVAS. Defendants specifically ask this Court for a declaration that they "are the owners of any copyrights obtainable relating to RIVAS" and "the rightful owners of copyrights in the RIVAS technology." Such a declaration would obviously affect TD Bank's and TDO's interests in RIVAS.

If a court determines that a party is necessary under Rule 19(a), it must next examine whether, under Rule 19(b), "in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as being indispensable." Fed.R.Civ.P. 19(b). Rule 19(b) sets forth four factors to consider in deciding whether an absent party is "indispensable": (1) the extent to which a judgment entered without the absent party might be prejudicial to him or those already parties; (2) the extent to which protective measures might be employed to lessen or avoid the prejudice; (3) whether a judgment rendered in the absence of the party will be adequate; and, (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder. *Id.*

TD Bank and TDO would be manifestly prejudiced if this Court or a jury were to rule or find that Defendants are the owners of any copyrights obtainable relating to RIVAS and the rightful owners of copyrights in the RIVAS technology. Defendants respond that they only seek one-half of the proceeds Stafford received from TD from the sale of RIVAS. Then Defendants must amend the Counterclaim accordingly or this action will be dismissed because this Court will not declare Defendants the owners of RIVAS or any copyrights existing in RIVAS in the

absence of TD Bank or TDO.[5]

## CONCLUSION

In conclusion, Stafford's Motion for Summary Judgment is DENIED. Stafford's Motion to Dismiss is partially GRANTED and partially DENIED. Counts V (Fraud) and VIII (Unjust Enrichment) of Defendants' Counterclaim are dismissed because they are preempted by the Illinois Trade Secrets Act. Count VI is dismissed for failure to state a claim upon which relief can be granted. Defendants are hereby ordered to amend their Counterclaim to omit requests for declarations to the effect that they are the rightful owners of any copyrights in RIVAS or to join TD Bank and/or TDO to this action.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **May 21, 2007**

---

[5] Defendants argue in their Response that joinder is not necessary because they concede that title to RIVAS has passed to TD Bank and TDO and that they will execute whatever assignments are necessary to effectuate TD Bank's and TDO's ownership of RIVAS. However, Defendants' concession does not ameliorate the relevant language of the Complaint, nor can one amend a complaint through responsive pleadings.